UNITED STATES DISTRICT COURT FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | CASE No. CR-05-225-C-EJL |
| | ) | |
| vs. | ) | MEMORANDUM ORDER |
| | ) | |
| TONY L. BOYER, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Before the Court is the Defendant's, Tony Boyer, motion to suppress. The parties filed their briefing on the motion. On June 12, 2007 the Court held a hearing on the matter. Based upon the briefing, arguments, and evidence submitted the Court finds as follows.

## FACTUAL BACKGROUND

On March 16, 2006, Chief Lee Reed of the Asotin Police Department contacted the Defendant and asked him to come to the Asotin Police Department to discuss information Chief Reed had obtained relating to an arson of the Defendant's home which occurred approximately one and a half years prior. The Defendant arranged to come to the station shortly after being contacted and arrived at the station in his own vehicle. Upon his arrival, the Defendant was taken into Chief Reed's office which was described by all the witnesses as a "small" office.

MEMORANDUM ORDER -1-

Chief Reed testified that he talked with the Defendant about the arson for fifteen or thirty minutes and then Chief Reed contacted three other law enforcement officers who had previously stated they wanted to talk to the Defendant about a separate drug investigation. The other officers, who are members of the Quad Cities Drug Task Force ("QCDTF") and the FBI, arrived within a few minutes of being contacted and began questioning the Defendant regarding their drug investigation.[1] The officers maintain that they told the Defendant he was not under arrest, he was free to leave, the door was unlocked and the Defendant was not blocked from leaving, and that the Defendant would be better off if he cooperated. The officers testified that the Defendant willingly talked with them and that the entire interview was "friendly and cordial" as evidenced by the fact that the Defendant arrived with pizza, he was given a soda, he left to use the restroom and returned to the office on his own, and he went to his vehicle to talk to his girlfriend and again returned to the office. The interview lasted approximately 45 minutes.

The Defendant also testified at the hearing and denied that Chief Reed discussed the arson with him at all. Instead, the Defendant testified that as soon as he was taken into the office Chief Reed called the three other officers who all entered the small office for the interview. The Defendant testified that he was not told he was free to leave until the end of the interview, he did not feel free to leave, and that he thought he was going to be arrested. At the hearing the Defendant also admitted that he was under the influence of methamphetamine at the time of the meeting.

---

[1] The other officers included Detective Mark Gibbs and Detective Bryce Nebe of the QCTF and FBI Special Agent David Shea.

MEMORANDUM ORDER -2-

**ANALYSIS**

Defendant asserts the encounter was a custodial interrogation because he was detained and not free to leave. The Government argues the interview was not a custodial interrogation because the Defendant was free to leave and the Defendant voluntarily spoke with officers.

For purposes of the Fourth Amendment, a seizure occurs when an officer, through some form of physical force or show of authority, restrains the liberty of a citizen. United States v. Summers, 268 F.3d 683 (9th Cir. 2001). Such restraint occurs if, "in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." Id. When an encounter is voluntary, no constitutionally protected right is implicated. Id.

Although the Defendant testified that he did not feel free to leave, under the totality of the circumstances the Court finds the opposite to be true. All of the officers present at the interview corroborated Special Agent Shea's testimony that he made it clear at the beginning of the interview that the Defendant that was free to leave. In addition, the interview was a discussion regarding several defendants in the officers' on-going investigation and the overall nature of the encounter do not evidence circumstances under which a reasonable person would have believed he was not free to leave. The officers did not display any weapons and the Defendant was allowed to leave the office and returned on his own even though his vehicle was parked outside. There was some disagreement as to how many times the Defendant left the office and whether he went to his vehicle

during the course of the interview. Regardless, the undisputed circumstances remain that the Defendant was not in custody and had the opportunity and the means to leave had he chosen to do so. The Court further finds it telling that for a period of time after the interview, the Defendant met with and cooperated with the officers following this interview.

As to the Defendant's argument that he was not given Miranda warnings, "[a]n officer's obligation to administer Miranda warnings attaches only where there has been such a restriction on a person's freedom as to render him in custody." United States v. Norris, 428 F.3d 907, 912 (9th Cir. 2005) (quoting United States v. Crawford, 372 F.3d 1048, 1059 (9th Cir. 2004) (en banc) (citations omitted)). "A person is in custody only where 'there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest.'" Id. (citation and internal quotation marks omitted). Because the Court determined above that the Defendant was not in custody or detained, the officers were not required to advise the Defendant of his Miranda rights before questioning. See California v. Beheler, 463 U.S. 1121, 1122 (1983) ("Miranda warnings are not required when a suspect voluntarily comes to the police station, is not placed under arrest, and is allowed to leave unhindered after a brief interview.").

The Court further finds that considering the totality of the circumstances surrounding the Defendant's statements to officers were voluntary. See Mincey v. Arizona, 437 U.S. 385, 398 (1978). "A confession is involuntary if coerced either by physical intimidation or psychological pressure." Crawford, 372 F.3d at 1061 (quoting

United States v. Haswood, 350 F.3d 1024, 1027 (9th Cir. 2003)).  In determining whether a defendant's confession was voluntary, "the question is 'whether the defendant's will was overborne at the time he confessed.' " Id. (citations omitted).  Courts "must consider the totality of the circumstances involved and their effect upon the will of the defendant." Id. (citations omitted).  Although the interview took place in a "small" office and there were several officers present, there is no evidence that the officers' conduct during the interview was coercive in any way.  The officers did not display any weapons, behave aggressively, or otherwise act in such a way that would overbear the Defendant's free will.

## ORDER

Based on the foregoing and being fully advised in the premises, the Court **DENIES** Defendant's motion to suppress.  (Dkt. No. 197).

DATED: **July 6, 2007**

Honorable Edward J. Lodge
U. S. District Judge

MEMORANDUM ORDER -5-